The Chancellor.
On the 18th March, 1830, Aaron Peck gave his note, of that date, to Samuel Condit, for $1500 payable on demand, with interest; and, to secure the payment of it, executed and delivered to Samuel Condit a mortgage, of the *42 same date, on a tract of land in Orange. On the 1st May, 1830, A. Peck executed and delivered to Samuel M. Dodd a mortgage to secure the payment of a note given by Peck to Dodd, for $2400, payable to Peck or order, on demand, with interest. This second mortgage covered the tract contained in the first mortgage and another tract of land. On the 15th February, 1831, A. Peck conveyed both tracts to William Peck and Elijah C. Pierson; and it would seem that William Peck and Elijah C. Pierson afterwards conveyed to John Peck the second tract mortgaged to Dodd, and which was not mortgaged to Condit. Samuel M. Dodd died in October, 1831, and administration of his personal estate was granted to Caleb Baldwin and Jemima Dodd. On the 26th August, 1836, the administrators of Samuel Dodd released the lot secondly described in their mortgage from the operation and lien of their mortgage. The answer of the administrators says, that the release was made to the owners thereof according to law; and that the release was made with the knowledge, approbation and consent of A. Peck and of Samuel M. Condit. Afterwards, on the said 26th August, ■ 1836, (in the language substantially of the answer,) the said Samuel Condit made and entered into ah agreement in writing under his own hand and seal to and with the defendants, of the date last mentioned, whereby he stipulated and agreed, for the considerations therein expressed and referred to, to and with the defendants, (the administrators ,) that the’ said Dodd mortgage should be considered and held as the first lien on the lot described in the mortgage to Condit, notwithstanding the prior date and execution of his, Condit’s mortgage. The answer says, that this agreement was made and entered into by Condit with a full knowledge that the said defendants had made the said release, and with the full knowledge and approbation of the said A. Peck, William Peck and ¡Elijah C. Pierson. ■ The agreement states ■the two mortgages, "and that he, 'Condit, had agreed, for certain good causes and considerations, to give priority to the Dodd mortgage; and then, in consideration of the premises and of $1, to him paid, consents, covenants and agrees to and with the said administrators of Samuel ¡M. Dodd, deceased, that the Dodd mortgage shall be considered and held to be the prior lien. In *43 April, 1840, a judgment for §1114, 94, and in October, 1840, another judgment for §2500 were recovered by John Taylor, both against A. Peck, C. R. Akers, Elijah C. Pierson, Samuel Condit and William Peck. On the 20th October, 1840, Jonas Smith recovered a judgment against A. Peck, William Peck, Lewis Dodd and Samuel Condit, survivors of Samuel M. Dodd, for $794 53 ; and other judgments for large amounts were recovered, in 1841, against the said Peck, Pierson and Condit. In. Fehruary, 1842, Jonas Smith recovered another judgment against A. Peck, William Reck, and Lewis Dodd, deceased, for $761 83 ; and oil the same day, John Taylor recovered a judgment against A. Peck, C. R. Akers, Elijah C. Pierson, Samuel Condit and William Peck, for $1976 64; and on the 10th May, 1842, Isaac Baldwin recovered a judgment against William Peck, Elijah C. Pierson and Samuel Condit, for $1652 19. On the 20th September, 1842, Samuel Condit, by an assignment endorsed on the said Mortgage given by A. Peck to him, stating his assignment to have been made for a valuable consideration to Mm paid by the complainants, assigned Ms said mortgage to the complainants and the note referred to therein. On the 15th February, 1843, the complainants, as assignees of the Condit mortgage, filed their bill for the foreclosure of that mortgage and the sale of the premises under it, as the prior incumbrance, making the administrators of Samuel M. Dodd parties defendants as subsequent mortgagees. Those defendants set up the agreement of Condit before stated, that the Dodd mortgage should be considered the prior incumbrance.
There can be no doubt that if Condit had not assigned his mortgage, but had himself filed tho bill for foreclosure, the court would have given effect to his agreement under seal, if produced by the administrators of Dodd, that the Dodd mortgage should be considered and held to be the first lien ; whether that agreement was considered as only a covenant or as something moro. Nor can there be any doubt that the assignee of a bond and mortgage takes them subject to all equities existing in favor of the mortgagor against the mortgage. But the question involved in this case is whether, when there are two mortgagees, one pier wd the ether subsequent, wd the subsequent mortgagee *44 takes from the prior mortgagee a writing under seal that the subsequent mortgage shall be considered and held to be the prior incumbrance, but no change is made in the registry of the ‘mortgages, and the mortgagee whose mortgage is prior in date :and registry afterwards assigns his mortgage to a bona fide assignee without notice of the agreement between the two mortgagees, the subsequent mortgage is to be considered the prior incumbrance as against such assignee. This is the statement of the question on the supposition that the subsequent mortgagee .setting up the agreement and the assignee of., the mortgage first in execution and registry are both innocent. On this question, I am strongly inclined to the opinion that the bona fide assignee ■of the mortgage first in execution and registry, without notice of the agreement between the mortgagees, has the better equity; and that the mortgage so assigned to him should be decreed to be, in his hands, the first incumbrance; and that the subsequent mortgagee should be left to his action against the first mortgagee for a breach of covenant. If such an agreement should be held to be equivalent to the actually putting the second mortgage first, notwithstanding the registry to the contrary, then the ■second mortgagee, by procuring such an agreement and perrnit-ting the registry to remain unchanged, puts it in the power of the ■first mortgagee, and is active in so putting it in his power, to inflict a loss on an innocent assignee of the first mortgage. No diligence on the part of any one about to take an assignment of the first ■mortgage would protect him, or apprise him of danger. If he goes to the mortgagor to inquire of him if he has any equities against the mortgage, he is answered No, and that the money is all due. If he goes to the records, he finds that the mortgage he is about to take is the first incumbrance. These are the only sources of inquiry to which he can apply. The information he receives is Satisfactory, and he takes the mortgage. When he comes to foreclose his mortgage, if the second mortgagee produces an agreement between him and the first, that the second mortgage ■■¡aha.ll be considered and held to be the first, I think the assignee could truly and justly answer that that did not make it the first; that the first mortgagee still kept it in its place as the first, in breach of his agreement, and that he, the second mortgagee, *45 must resort to his remedy on the agreement. Indeed, I do not see that, unless there be a change in the registry, there could be any thing but a covenant between the two mortgagees. The recording of such an agreement would not have the effect of putting the second mortgage first as against third persons. What could lead a third person, searching for mortgages against a mortgagor and the priorities of them, to look for an agreement between the mortgagees inverting the order of registry. There has been no effort on the part of the defendants to question the bona Jides of the assignment to the complainants, or their want of notice. It seems, on the contrary, to be admitted by the answer. Under these circumstances, and supposing the defendants to’ be equally innocent in other respects, the loss, I think, should fall, (if any is to be sustained,) on the defendants, the second mortgagees. They should be left to their remedy on the covenant. On principle, the case seems to me to be with the complainants; and several adjudged cases referred to on the argument sustain the principle. In Murray and others against Lylburn and others, decided by Chancellor Kent, 2 John. Ch. Rep. 441, one Winter held certain lands in trust. The cestui que trust filed a bill against Winters, the trustee, charging him with a breach of trust; and obtained an injunction restraining him from acting as trustee, and from selling any of the trust estate or assigning any securities. Winter, notwithstanding, sold part of the trust estate to Sprague, and took his bond and mortgage for the purchase money, and afterwards assigned Sprague’s bond and mortgage to Lylburn. The question was whether Lylburn, the assignee, was accountable to the cestui que trust for the bond and mortgage, as Winter, the assignor, would have been had he kept it. No doubt the bond and mortgage in the hands of the assignee, Lylburn, were subject to any equities existing in favor of Sprague, the mortgagor, against Winter, the mortgagee and assignor. But the bond and mortgage in Winter’s hands wrnre subject to another equity; not an equity of the mortgagor, but an equity of a third person, the cestui que trust, who could have subjected them, in Winter’s hands, to the trust; as, in the case before us, the administrators of Dodd might, by virtue of the agreement, have postponed Condit’s mortgage to *46 them, if it had remained in Condit’s hands. The question was, whether the bond and mortgage, in the assignee’s hands, was subject to such an equity of a third person, not a party to them, because they were subject to it in the hands of the assignor. The Chancellor said, that the rulp that the assignee of a chose in action takes it subject to the same equity it was subject to in the hands of the assignor is generally understood to mean the equity residing in the obligor or debtor, and not an equity residing in some third person against the assignor. That one about purchasing a bond from the obligee can always go to the obligor and ascertain what claims he may have against the bond; but that he may not be able, with the utmost diligence, to ascertain the ' latent equity of some third person against the obligee ; that he has no object to which he can direct his enquiries; and that, for this reason, the claim of the assignee without notice was preferred in the late case of Redfern v. Ferrier, 1 Dow, 50, to that of a third party setting up a secret equity against the assignor; thus sanctioning the decision in Dow, in which Lord Eldon said that if it was nokto be so no assignments could ever be taken with safety. The case we have in hand is much stronger in favor of the bona fide assignee than the case put by Chancellor Kent. The holders of the Dodd mortgage are chargeable with permitting the registry to remain unaltered to mislead an innocent person; and besides, they have a covenant from the other mortgagee which was broken by his assignment, if the assignment is good and the mortgage first in execution and registry is entitled to preference. In Moore v. Holcombe, 3 Leigh 597, Holcombe sold land to Moore, and took no security for the purchase money. Moore then sold the land to F. and took his bond for the purchase money; then assigned the bond to a bona fide assignee having no notice of Holcombe’s claim to a lien on the land for the purchase money due from Moore to him. It was held that though the bond, in the hands of Moore, the assignor, might have been subject to Holcombe’s equity, yet that Holcombe could not assert his equity against Moore’s assignee of the bond; that though a bond in the hands of an assignee is subject to any equity of the obligor, it is not subject to any equiof a third person not party to the bond of which he had no *47 notice. The case of Dearle v. Hall, 3 Russell 1, is authority for the complainants in this case. One having a beneficial interest in money in the hands of trustees assigns it to A., but no notice of the assignment is given to the trustees; he afterwards proposes to sell the same interest to B.; B. inquires of the trustees as to the nature of the title and the amount of the interest, and receiving no intimation of any prior incumbrance, completes the purchase and gives the trustees notice. It was held, and I think rightly, that B. had a better equity than A.
For myself, I should be satisfied to let the result to which I have come in this cause rest on the "ground on which, thus far, I have put it. But, perhaps, it is the duty towards the parties, of a court whose decisions are subject to the review of a higher tribunal, to state every view that occurs to it which may have an influence on the decision of the cause, one way or the other. This is a case 'which, in view of the facts as they are claimed to exist on the part of the defence, may be said to bo of a very extraordinary character; so much so as to impress the idea that the defence should be examined with care. The view to which I have alluded as being proper to bo suggested respects the answer of the defendants. It appears to me there is an evident halting in it as to several important matters. They say that, on the 26th August, 1836, they released the lot secondly described in their mortgage, to the owners thereof according to law', from the operation and lien of their mortgage; and that the said release was made with the knowledge, approbation and consent of A. Peck and of Samuel Condit. That afterwards, on the said 26th August, 1836, Condit made and entered into an agreement in writing, under his hand and seal, to and with the defendants, dated the day and year last aforesaid, whereby he stipulated and agreed, for the considerations therein named and referred to, to and with these defendants, that the said Dodd mortgage should bo considered and held as the first lien on the land described in, the mortgage to Condit, as by the said agreement, now in the posession of these defendants, will appear. That the said agreement was made and entered into by Condit with a full knowledge that these defendants had made the said release. In a subsequent part of the answer they say, that the said agreement wa3 *48 made and entered into by and between the said Samuel Condit and these defendants, with the full knowledge, consent and approbation of the said A. Peck, William Peck and Elijah C., Pierson, at the time of the making thereof.
On looking at the writing called the agreement of Condit, we find it makes no reference whatever to the release given by these-defendants. It states the two mortgages, and that he, Condit, has agreed, for certain good causes and consederations, to give priority in payment to the Dodd mortgage; and then declares, that in consideration of the premises and of $1, to him paid, (without saying by whom,) he has thereby consented, covenanted and agreed to and with the said administrators of Dodd, that the Dodd mortgage shall be considered and held as the prior lien on &c. This writing is signed by Dodd only. The release executed by these defendants-recites that A. Peck, on the 1st May,.,, 1830, had executed and delivered.to Samuel M. Dodd a bond, and Mortgage for $2400 and interest on certain premises in Orange, one of which is a lot &c; (describing the second lot mentioned in that mortgage;) and then declares that they, for a good and valuable consideration, and of $1 to them paid “by John Peck the present owner of the said lot,” release the same from the operation of the said mortgage. The two instruments are sepa- - rate and distinct from each other, neither having any reference to the other. Now, as to the character of the answer, it is to-be remai’ked, first, that it does not allege that there was any connexion between the two writings, or that one was executed in consideration of the other. It is, indeed, inconceivable how are-lease by the holders of the Dodd mortgage, to John Peck, of a lot covered by that, the subsequent mortgage, which the Condit prior mortgage did not cover, could be a consideration for Con— dit’s giving priority to the subsequent mortgage over his, on the .only lot his mortgage covered, the only security he had. There -is something in that which ordinary men, dealing upon ordinary principles and motives, can not understand. But Condit’s agreeing and covenanting, that the subsequent mortgage should be considered and held as the prior incumbrance on the lot covered by the first mortgage, might be an inducement or consideration, for the holders of the subsequent mortgage to release from its- *49 operation the lot covered by it which was not covered by the first-mortgage. But, if that agreement was the consideration of the release, it is extraordinary that it was not stated in the release; and still more extraordinary that it was not so stated in the answer to be sworn to by these defendants.
Again, the answer does not state that these defendants were, or that either of them was present when Condit “made and entered into” the agreement, (to use the language of the answer,) nor that there had been any previous negotiation between Condit and them, or either of them, in reference to the subject matter of the release and agreement, or either of them. If the two were connected, and the release was given by these defendants in consideration of Condit’s writing, called the agreement, the counsel for these defendants would certainly have obtained that information from the defendants : he could not have failed to make the inquiry. And, if he was so informed, it is not conceivable that the astute draftsman of their answer could have put the answer in the shape he has given it.
Again, it is not alleged in the answer that the writing called Condit’s agreement was delivered to these defendants. A slight reading of the answer might make the impression that it was delivered to the defendants. The making the agreement, or writing called an agreement, is spoken of in several different places in the answer ; but in each of them there is an absence of the allegation of delivery, a circumstance which we have not a right to overlook. In each of the different places the allegation is, that Condit made and entered into an agreement to and with these defendants. This seems to be going far for the defendants to swear to, if they were not present at the time the writing was made, and it was not delivered to them; for an agreement in its proper legal sense requires the mind and assent of two persons. A reference to the language of the answer and of the writing itself will show on what ground the language of the answer was adopted. The answer says, that he, Condit, made and entered into an agreement in writing, under his hand and seal, to and with the defendants. By turning to the writing we find that the answer uses the language and form of expression of the writing. The writing says, Be it known &c., that I have consented, cov *50 enanted and agreed to and with C. and J. Baldwin and J. Dodd administrators, &c. The answer says, he, Condit, made and entered intoüan agreement to and with &c.; and in this form the defendants swear to the answer. We are not at liberty to say, under these circumstances, that the defendants intended to say, er that the draftsman supposed they would be understood as saying, by the language adopted, either that the defendants were present when the writing was made, or had ever made any negotiation or arrangement for such a writing, or that that writing was delivered to them. Indeed if they had, and the writing had been delivered to them, it is hardly supposable that they, having executed a release of the other lot, would have been satisfied to let the registry remain as it was. If the writing was delivered to them, and they were satisfied to let the registry remain as it was, they must be considered as relying on the covenant of Condit. But the only thing like an allegation of delivery in the whole answer is the allegation that the writing “is now,” that is at the time of making the answer, in the possession of these defendants.
But I am glad that I have been able to decide the cause very satisfactorily to my own mind, by the application of a just and equitable general principle; and have not been obliged to put the decision of a case so unexampled in some of its features on the defects in the answer on which I have felt it my duty to make the foregoing comments.
I am of opinion that the complainants’ mortgage is entitled to preference.
Decree accordingly.